# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| **APPLIANCE CONTROLS GROUP** | ) |  |
| **HOLDINGS, INC. AND APPLIANCE** | ) |  |
| **CONTROLS GROUP, INC.,** | ) | Case No. 04-14517 |
|  | ) |  |
| Debtors. | ) | Hon.   A. Benjamin Goldgar |
|  | ) |  |

## INTERIM ORDER (1) AUTHORIZING INCURRENCE OF INDEBTEDNESS WITH ADMINISTRATIVE SUPER-PRIORITY AND SECURED BY SENIOR LIENS ON AND SECURITY INTERESTS IN SUBSTANTIALLY ALL ASSETS OF THE DEBTORS PURSUANT TO SECTIONS 364(C)(1), (2) AND (3) OF THE BANKRUPTCY CODE, (2) GRANTING ADEQUATE PROTECTION AND OTHER RELIEF AND (3) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF THE HEARING ON THE DEBTORS' MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS

This matter coming to be heard on the Emergency Motion (the "Motion") of Appliance Controls Group Holdings, Inc. ("Holdings"), and its wholly-owned subsidiary, Appliance Controls Group, Inc. ("ACG," and together with Holdings, the "Debtors"), as debtors and debtors in possession in the above-captioned cases, for the entry of an order authorizing the Debtors to, inter alia:

(a)     obtain, under sections 364(c)(1), (2) and (3) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), post-petition financing (the "DIP Financing") pursuant to the terms and conditions of (i) that certain Loan and Security Agreement, dated as of June 21, 2002 (as amended, the "Transamerica Prepetition Loan Agreement"), between ACG as borrower and Transamerica Business Credit Corporation ("Transamerica") as lender, and any other agreements, instruments and documents entered into in connection with the Transamerica Prepetition Loan Agreement (collectively, the

CHI:1353011.8

"Transamerica Prepetition Loan Documents")[1]; and (ii) that certain Loan and Security Agreement, dated as of July 26, 2002 (as amended, the "Hilco Prepetition Loan Agreement"), between ACG as borrower and Hilco Capital LP ("Hilco" and with Transamerica, the "DIP Lenders") as lender, and any other agreements, instruments and documents entered into in connection with the Hilco Prepetition Loan Agreement (collectively, the "Hilco Prepetition Loan Documents" and with the Transamerica Prepetition Loan Documents, the "Prepetition Loan Documents") as amended by this Order;

(b)   give to the DIP Lenders assurances for the full and timely payment by and performance of the obligations and indebtedness of the Debtors to the DIP Lenders in connection with such post-petition financing, including, without limitation, all principal, interest, costs, fees and expenses by granting to each of the DIP Lenders (i) pursuant to section 364(c)(1) of the Bankruptcy Code, an administrative expense claim allowable under section 503(b) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 105, 503(b), 506(c) and 507(b) of the Bankruptcy Code, subject, as to priority, only to fees payable pursuant to 28 U.S.C. § 1930(a)(6), and the Carve-Out (as defined below); and (ii) pursuant to sections 364(c)(2) and (c)(3) of the Bankruptcy Code, a continuing Lien on, with first priority except as specifically provided below, all of the following: all of the Debtors' property and interests in property, whether real, personal or mixed, now existing or owned or hereafter arising or acquired, and wherever located, including, without limitation, all of its right, title and interest in and to all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, goods, real property interests, franchise rights, patents, trade names, copyrights, intellectual property, software, general intangibles, avoidance actions and recoveries arising under sections 544, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code ("Avoidance Actions"), investment property and all substitutions, accessions, insurance proceeds and other proceeds of the foregoing (collectively, the "DIP Collateral"), in the same priority as currently exists between Transamerica and Hilco in accordance with that certain Intercreditor Agreement dated as of July 26, 2002 between Transamerica and Hilco (the "Intercreditor Agreement"), provided, however that Avoidance Actions shall not serve as collateral for the Transamerica Postpetition Obligations; and _and_ _shall not serve as Collateral for the H-I (o Postpetition Obligations unless so provided in the final Order_

(c)   provide adequate protection to the DIP Lenders as lenders under the Transamerica Prepetition Loan Documents and the Hilco Prepetition Loan Documents, respectively, for and to the extent of any diminution in the value of their respective interests in the Prepetition Collateral (as hereinafter defined).

_and section 506(c) claims_

---

[1]   All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Transamerica Prepetition Loan Documents.

_notwithstanding anything herein to the Contrary,_

The Debtors having requested in the Motion that a hearing (the "Preliminary Hearing")
be scheduled on an expedited and emergency basis to consider the approval of the proposed DIP
Financing pending a final hearing (the "Final Hearing") before this Court to consider the final
approval of the DIP Financing; and telephonic and/or telecopy notice of the Preliminary Hearing
having been given to (a) the United States trustee, (b) Transamerica, (c) Hilco; (d) each of the
twenty (20) largest unsecured creditors of the Debtors, and (e) all other parties having a lien on
or security interest in the Debtors' assets or property; and it appearing that under the
circumstances of these cases, and after considering the Debtors' immediate need for the use of a
portion of the DIP Financing, adequate and appropriate notice of the Preliminary Hearing was
given pursuant to Rule 4001(c)(1) of the Bankruptcy Rules and Rule 4001-2 of the Local Rules
of the United States Bankruptcy Court for the Northern District of Illinois; and the Preliminary
Hearing having been held on April 12, 2004; and the DIP Lenders having agreed to provide the
DIP Financing on the terms and conditions set forth in this Order;

Now, upon the record of the Preliminary Hearing, and a sufficient showing having been
made on the record, and after due deliberation, and good and sufficient cause appearing therefor,
the Court hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      On April 12, 2004 (the "Petition Date"), the Debtors each filed their respective
petitions for relief under chapter 11 of the Bankruptcy Code commencing these chapter 11 cases
(collectively, the "Case").

B.      The Debtors have continued in the management and operation of their businesses
and properties as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.
No trustee, examiner or official creditors' committee has been appointed in this Case.

C.    From time to time before the Petition Date, Transamerica loaned money and extended other financial accommodations to ACG under the Transamerica Prepetition Loan Documents.    Holdings provided an unconditional guaranty of ACG's indebtedness to Transamerica.

D.    From time to time before the Petition Date, Hilco loaned money and extended other financial accommodations to ACG under the Hilco Prepetition Loan Documents. Holdings provided an unconditional guaranty of ACG's indebtedness to Hilco.

E.    The Debtors have represented that they (i) were indebted to Transamerica as of the Petition Date in the approximate principal amount, together with accrued and unpaid interest, fees and expenses owing to Transamerica, including reasonable attorneys' fees incurred under or in connection with the Transamerica Prepetition Loan Agreement, of $5,437,420.68 (the foregoing obligations are referred to herein collectively as the "Transamerica Prepetition Obligations"); (ii) were indebted to Hilco as of the Petition Date in the approximate principal amount, together with accrued and unpaid interest, fees and expenses owing to Hilco, including reasonable attorneys' fees incurred under or in connection with the Hilco Prepetition Loan Agreement, of $6,287,412.15 (the foregoing obligations are referred to herein collectively as the "Hilco Prepetition Obligations" and jointly with the Transamerica Prepetition Obligations, the "Prepetition Obligations") and (iii) do not have any counterclaim, setoff, defense or objection against either of the DIP Lenders relating to any of the Prepetition Obligations.

F.    The Debtors have further represented that, as more specifically described in the Motion and the Prepetition Loan Documents, the Prepetition Obligations are secured by security interests in and liens on certain collateral which constitutes substantially all of ACG's tangible and intangible personal property interests (other than approximately one-third of the outstanding

common stock of Harper-Mex, S.A. de C.V., a wholly-owned subsidiary of ACG formed under the laws of Mexico)(collectively, the "Prepetition Collateral[2]," and together with the DIP Collateral, the "Collateral").

G.    The Debtors have further represented that the Prepetition Collateral has been pledged to the DIP Lenders, and the DIP Lenders assert that they held, and continue to hold, and the Debtors hereby acknowledge and agree that they shall not contest that the DIP Lenders held and continue to hold valid, enforceable, and non-avoidable liens and security interests in the Prepetition Collateral. The Debtors acknowledge that there are no other Liens on the Prepetition Collateral except for (i) the liens and security interests under the Prepetition Loan Documents; and (ii) certain purchase money lenders and equipment lessors. The Debtors have further represented that (i) the liens on and security interests in the Prepetition Collateral were granted for fair consideration and reasonably equivalent value and were granted contemporaneously with the making of the loans secured thereby; (ii) the Debtors are unaware of any action taken by the DIP Lenders which would result in the postponement or subordination of the Prepetition Obligations; (iii) the value of the Prepetition Collateral in which the DIP Lenders have asserted a valid and perfected security interest exceeds the amount of the Prepetition Obligations; and (iv) that the Prepetition Loan Documents are valid and enforceable and in full force and effect.

H.    Within approximately 35 days after the Petition Date but in no event later than May 31, 2004, the Debtors expect to file a motion (the "Sale and Procedures Motion") seeking authority to sell substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code and to establish bidding procedures for such sale in form and substance satisfactory to the

---

[2]    Pursuant to the terms of the Intercreditor Agreement, Transamerica has a first priority lien in and upon all of the Prepetition Collateral other than the "Mexican Equipment" (as that term is defined in the Intercreditor Agreement), which is subject to a first priority lien in favor of Hilco.

DIP Lenders, which motion will provide the Debtors with an opportunity to negotiate a sale with third parties for a period of time prior to scheduling an auction, but will, following an Event of Default, request that the Court immediately set a date for an auction sale of substantially all of the Debtors' assets, at the election of the DIP Lenders, subject to the provisions of this Order.

I.      Within approximately two weeks after the Petition Date, the Debtors expect to file a motion to retain a real estate broker to sell their real property located in Princeton, Illinois.

J.      Based on the evidence presented to this Court by the Debtors, it appears that (i) an immediate need exists for the Debtors to obtain the DIP Financing to continue the operation of the Debtors' businesses long enough to consummate a sale of substantially all of their assets as contemplated by the Sale and Procedures Motion; (ii) the Debtors cannot fund their operations from anticipated cash collateral, and neither Transamerica nor Hilco will consent to the use of cash collateral; (iii) without such DIP Financing, the Debtors will be unable to conduct their businesses, to pay their employees, and to meet their other direct operating expenses; and (iv) without such DIP Financing, the likelihood of the Debtors consummating a sale of substantially all of their assets or the value realized from such sale will be greatly diminished. Absent entry of this Order, it would appear that the Debtors' operations will shut down, a going concern sale process will not be undertaken and the result will be immediate and irreparable harm to the Debtors' bankruptcy estates. Therefore, entry of this Order and approval of the DIP Financing will benefit the Debtors and their estates.

K.      Notwithstanding anything in this Order or the Prepetition Loan Documents to the contrary, and notwithstanding the funding needs of the Debtors under the Budget (as defined below), the DIP Lenders have agreed to extend, upon entry of a final order approving the DIP Financing following the Final Hearing (the "Final Order"), DIP Financing for the purpose of

providing funds to enable the Debtors to achieve a sale of their assets as will be contemplated by

the Sale and Procedures Motion.

L.    Based on the Debtors' Motion and in view of the Debtors' current financial

condition, financing arrangements and capital structure, the Debtors are unable to obtain

adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code merely as

an administrative expense pursuant to sections 364(b) or 364(c)(1) of the Bankruptcy Code.  The

DIP Lenders have conditioned the DIP Financing upon the grant to each of the DIP Lenders of

(i) an administrative expense allowable under section 503(b) of the Bankruptcy Code with

priority over any and all expenses and claims specified in any other section of the Bankruptcy

Code, including, without limitation, sections 105, 503(b), 506(c) and 507(b) of the Bankruptcy

Code, subject, as to priority, only to fees payable pursuant to 28 U.S.C. §1930(a)(6) and the

Carve-Out; and (ii) a continuing, perfected, first-priority Lien on the DIP Collateral, in the same

priority between Transamerica and Hilco as currently exists pursuant to the Intercreditor

Agreement.

M.    The terms of the DIP Financing, taken as a whole, are more favorable to the

Debtors than those available from alternative sources, and such financing will minimize disputes

and litigation over collateral values, priming, and the need to segregate pre-petition collateral

from assets acquired after the Petition Date.  The terms of the DIP Financing have been

negotiated in good faith and at arm's length between the Debtors and the DIP Lenders, are fair

and reasonable under the circumstances and are enforceable in accordance with their terms.

Consequently, any credit extended to the Debtors by the DIP Lenders under the terms of this

Order shall be deemed to have been extended in good faith as that term is used in section 364(e)

of the Bankruptcy Code, and each of the DIP Lenders is entitled to the benefits and protections of section 364(e) of the Bankruptcy Code.

N.    The Court has jurisdiction over this Case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334.    This Order is entered in a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O).

O.    The DIP Lenders have consented to the terms and conditions contained in this Order.

P.    The record adequately demonstrates the need for this Court to have scheduled the Preliminary Hearing on as expedited and emergency basis because of the potential for immediate and irreparable harm to the Debtors.

## ACCORDINGLY, IT IS HEREBY ORDERED AND DECREED THAT:

1.    The Motion is granted in all respects.    The Debtors shall be and hereby are authorized to borrow money and seek other financial accommodations from the DIP Lenders on the terms and conditions contained in this Order.

### Authorization to Incur the DIP Financing

2.    All post-petition advances and other extensions of credit made by the DIP Lenders to the Debtors shall be (i) made in accordance with the terms of this Order and the Prepetition Loan Documents, as amended by this Order; (ii) evidenced by the respective DIP Lender's books and records; and (iii) payable in full upon the Termination Date.

### DIP Financing from Transamerica

3.    All advances incurred from and after the entry of this Order and from time to time hereunder owing by the Debtors to Transamerica shall be deemed to be Revolving Credit Loans and shall hereinafter be referred to as the "Transamerica Postpetition Advances." The balance of the Transamerica Postpetition Advances shall not at any given time exceed the lesser of the

Borrowing Base and $5,391,736 (the "Transamerica Postpetition Availability"), except in the case of Transamerica Postpetition Overadvances as provided herein. Except as otherwise provided herein with respect to remedies following an Event of Default, no reserves shall be established by Transamerica under section 2.1(a) of the Transamerica Prepetition Loan Agreement in an amount greater than the amount of such reserves as of the Petition Date. The Transamerica Postpetition Advances, the costs and expenses of Transamerica referenced herein, the Transamerica Facility Fee (as defined below), the interest on the Transamerica Postpetition Advances, and all other sums owing to Transamerica in connection with the DIP Financing shall be referred to herein and constitute collectively the "Transamerica Postpetition Obligations."

4.    The Transamerica Postpetition Obligations shall bear interest at the LIBOR Rate plus 4.50% per annum (the "Transamerica Rate"). The default rate of interest with respect to the Transamerica Postpetition Obligations after the occurrence of an Event of Default shall be the Transamerica Rate plus 2%. Interest shall continue to accrue on the Transamerica Prepetition Obligations and, subject to paragraph 9 hereof, prepetition interest, fees, and expenses shall be payable monthly when billed in accordance with and to the extent provided in the Transamerica Prepetition Agreements. Interest, fees, and expenses on the Transamerica Postpetition Advances shall be payable monthly when billed in accordance with and to the extent provided in the Transamerica Prepetition Agreement, except for any early termination fees contemplated in section 4.6 of the Transamerica Prepetition Loan Agreement, which are hereby waived by Transamerica, and on demand after the occurrence of an Event of Default, regardless of whether such interest, fees and costs appear in the Budget. Fees and expenses (including, without limitation, reasonable attorneys' fees) incurred by Transamerica in connection with the

Transamerica Postpetition Advances shall constitute Transamerica Postpetition Obligations hereunder and as provided in the Transamerica Prepetition Loan Agreements.

5.     The Debtors shall pay to Transamerica a facility fee (the "Transamerica Facility Fee") for the DIP Financing incurred hereunder and under the Final Order equal to $107,835. The Transamerica Facility Fee shall be fully earned and payable (i) $50,000 within 21 days, and (ii) $57,835 within 56 days after the date the Debtors receive the initial Postpetition Advance and shall constitute a Transamerica Postpetition Obligation.

## DIP Financing from Hilco

6.     All advances incurred from and after the entry of this Order and from time to time hereunder owing by the Debtors to Hilco shall hereinafter be referred to as the "Hilco Postpetition Advances." The Hilco Postpetition Advances shall be requested by the Debtors solely to fund expenses in accordance with the Budget to the extent such funding needs exceed the Transamerica Postpetition Availability, and shall not exceed (i) $1,000,000 in the aggregate for the date hereof through the Final Hearing and (ii) $1,800,000 in the aggregate thereafter (the "Hilco Postpetition Availability"), in each case plus additional sums, if any, advanced by Hilco pursuant to paragraph 11 hereof; provided, however, that (i) at no time shall the line-item in the Budget entitled "Total Hilco Availability" exceed $(3,000,000) and (ii) Hilco may, in its sole and absolute discretion, increase the Hilco Postpetition Availability. It shall be an Event of Default hereunder if the line-item in the Budget entitled "Total Hilco Availability" exceeds $(3,000,000); provided, that such Event of Default may be waived as to both of the DIP Lenders by Hilco in its sole and absolute discretion. The Hilco Postpetition Advances, the costs and expenses of Hilco referenced herein, the Hilco Facility Fee (as defined below), the interest on the Hilco Postpetition Advances, and all other sums owing to Hilco in connection with the DIP Financing shall be

referred to herein and constitute collectively "Hilco Postpetition Obligations," and collectively
with the Transamerica Postpetition Obligations, the "Postpetition Obligations".

7.       The Hilco Prepetition Obligations and the Hilco Postpetition Obligations shall
bear interest at the rate specified in Section 4.1 of the Hilco Prepetition Loan Agreement (the
"Hilco Rate"); provided, however, that the percentage reference in Section 4.1(y) of the Hilco
Prepetition Loan Agreement shall be increased to 6%. The default rate of interest with respect to
the Hilco Postpetition Obligations after the occurrence of an Event of Default shall be the Hilco
Rate plus 3%. Interest shall continue to accrue on the Hilco Prepetition Obligations and, subject
to paragraph 9 hereof, prepetition interest, fees, and expenses shall be payable monthly when
billed in accordance with and to the extent provided in the Hilco Prepetition Loan Documents as
amended hereby. Interest, fees, and expenses on the Hilco Postpetition Advances shall be
payable monthly when billed in accordance with and to the extent provided in the Hilco
Prepetition Agreement, and on demand after the occurrence of an Event of Default, regardless of
whether such interest, fees and costs appear in the Budget. Fees and expenses (including,
without limitation, reasonable attorneys' fees) incurred by Hilco in connection with the Hilco
Postpetition Advances shall constitute Hilco Postpetition Obligations hereunder and as provided
in the Hilco Prepetition Loan Agreements. The principal portion of Hilco Postpetition
Obligations shall remain outstanding until the Transamerica Prepetition Obligations and the
Transamerica Postpetition Obligations are paid in full and the commitment to make
Transamerica Postpetition Advances has terminated. Hilco agrees to waive its Quarterly Facility
Fee (Section 4.3 of the Hilco Prepetition Loan Agreement) and its Monthly Monitoring Fee
(Section 4.6 of the Hilco Prepetition Loan Agreement).

8.     The Debtors shall pay to Hilco a facility fee (the "Hilco Facility Fee") for the DIP Financing incurred hereunder and under the Final Order equal to $534,836. The Hilco Facility Fee shall be fully earned on the date the Debtors receive the initial Postpetition Advance and shall constitute a Hilco Postpetition Obligation and shall be payable on the date of the earliest to occur of the events described in paragraph 37 hereof.

9.     The DIP Lenders shall provide Debtors' counsel, counsel for any creditors' committee formed in this Case ("Committee"), and the United States trustee with copies of all invoices (redacted to delete and attorney-client communications or other confidential information) with respect to attorneys' fees any related costs and expenses asserted as Postpetition Obligations arising after the entry of this Order. Any such recipient may object to the reasonableness of any such attorneys' fees and related costs and expenses, _provided_, that any such objection shall be forever waived and barred unless such party shall, within twenty (20) days of the receipt of an invoice to which it objects, serve upon the affected DIP Lender a written "Notice of Objection to Fee Statement" setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting party and the DIP Lender whose attorney's invoice is objected to shall attempt to reach an agreement regarding the correct payment to be made. If the parties are unable to reach an agreement on the objection within twenty days after receipt of such objection, the objecting party shall file its objection with the Court and serve such objection on the DIP Lenders and the other parties designated to receive invoices listed above and the Court shall consider and dispose of the objection. Any objection must describe with particularity the items of fees, costs and expenses to which the objecting party objects and provide the specific basis for each such objection. Any hearing on an objection to the fees, costs, and expenses set forth in any invoice shall be limited to the reasonableness or necessity of the particular items of

fees, costs and expenses to which the objecting party objects. The disallowance by the Court of any such fees, costs, and expenses shall not affect the DIP Lenders' right to collect such amounts from any person or entity other than the Debtors. Any portion of an invoice of a DIP Lender's attorney that is not objected to by the Debtors' counsel, Committee's counsel or the United States trustee shall be deemed a Postpetition Obligation and paid accordingly.

10.    Attached hereto as Schedule 1 is an initial budget which sets forth on a line item basis the projected cash receipts and disbursements of the Debtors on a weekly basis for the 11 weeks following the Petition Date. By no later than the fifth business day of each month beginning May 7, 2004, the Debtors shall deliver to the DIP Lenders and counsel for the Committee a revised budget in form and substance satisfactory to the DIP Lenders, reflecting on a line-item basis anticipated cash receipts and expenditures for the succeeding 45 days (each such budget, together with the budget attached hereto as Schedule I, shall hereinafter be referred to collectively as the "Budget"). Semi-monthly by no later than the fifth and twentieth business days of each month beginning May 7, 2004, the Debtors shall deliver to the DIP Lenders and counsel for the Committee a copy of a variance report (the "Variance Report") reflecting on a line item basis the actual cash receipts and disbursements for the preceding semi-month and the percentage variance of such actual results from those reflected in the Budget for the preceding semi-month. The Debtors shall use the Transamerica Postpetition Advances and the Hilco Postpetition Advances (jointly, the "Postpetition Advances") only in accordance with the Budget most recently delivered to and accepted by the DIP Lenders at any given time; provided, however, that the Debtors may, during the period ending April 30, 2004, exceed the "Total Uses" item in the most recent Budget on a cumulative basis (from the Petition Date) by no more than 15%, and may, during any month, exceed the Total Uses item in the most recent Budget on a

cumulative basis (from the Petition Date) by no more than 10%. Accordingly, any budgeted amounts for an expense line item not expended during any succeeding month may be carried over and expended in a subsequent month subject to such maximum permitted Budget variance.

11.    In the event the Debtors have borrowed the maximum amount of the Transamerica Postpetition Availability and the Hilco Postpetition Availability and the Debtors need additional borrowings to fund expenses in accordance with the Budget, the Debtors may borrow up to an additional $300,000 in Transamerica Postpetition Advances outstanding at any given time ("Transamerica Postpetition Overadvance"); provided, however, that any Transamerica Postpetition Overadvance must be repaid by the close of business on Friday of any week in which a Transamerica Postpetition Overadvance is made. It shall be an Event of Default under this order if a Transamerica Postpetition Overadvance remains outstanding at Noon on Monday of any week following the making of Transamerica Postpetition Overadvance unless Hilco, by 11:00 a.m. (Chicago time) on the next Business Day repays such Transamerica Postpetition Overadvance in full, in which case the amount so paid by Hilco to Transamerica shall become a Hilco Postpetition Advance subject to all the terms and conditions hereof. The aggregate amount of Transamerica Postpetition Overadvances converted into Hilco Postpetition Advances may not exceed $300,000.

12.    Except as otherwise provided in this Order, the Postpetition Obligations shall be:

(i)    claims entitled to the status of superpriority administrative expenses, in accordance with section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses, whether heretofore or hereafter incurred, specified in, or ordered by the Court pursuant to any other section of the Bankruptcy Code, including, without limitation, sections 105, 326, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, but subject to any claims under section 506(c);

(ii)    secured pursuant to section 364(c)(2) of the Bankruptcy Code, by a first priority perfected Lien on all present and after acquired property of the

Debtors not subject to a valid and perfected Lien on the Petition Date, *idance*
subject to the terms of the Intercreditor Agreement, ~~and~~ *except for Avoidance*
*Actions; and*

(iii)    secured pursuant to section 364(c)(3) of the Bankruptcy Code, by a
perfected junior Lien on all property of the Debtors that is otherwise
subject to a valid and perfected Lien on the Petition Date.

Except as specifically and expressly provided in this Order, the terms and conditions of the

Postpetition Advances hereunder, the creation, perfection, and priority of the liens and security

interests granted to the DIP Lenders, and all other terms and conditions evidencing and

governing the Postpetition Obligations hereunder shall be upon the same terms and conditions as

set forth in the Prepetition Loan Documents, as supplemented or amended hereby. Neither of the

DIP Lenders shall be required to enter into any other agreements, file any financing statements,

mortgages or other documents in any jurisdiction or take any other action in order to evidence

the Postpetition Obligations or to validate or perfect the security interests and liens granted to it

by this Order.

13.    Any request (a "Request") by the Debtors for a Postpetition Advance under this

Order and the Prepetition Loan Documents shall be provided to the DIP Lenders no later than

10:30 a.m. (Chicago time) on the date the Debtors are requesting a Postpetition Advance. Such

Request shall include a reasonably detailed explanation of the intended use of the requested

advance, which use shall be strictly in accordance with the Budget. To the extent that either of

the DIP Lenders makes a Postpetition Advance under this Order and the applicable Prepetition

Loan Documents, the Debtors shall use such cash or credit solely for the purposes set forth in

both the Budget and the Request. Neither any Postpetition Advance, the Carve-Out, the DIP

Collateral nor any cash collateral of the DIP Lenders may be used to commence or prosecute any

action or objection to the Liens, claims or security interests of the DIP Lenders.

### Security for the DIP Financing; Administrative Claims

14.    As security for the full and timely payment and performance of the Postpetition

Obligations, each of the DIP Lenders is hereby granted, pursuant to sections 364(c)(2) and (3) of

the Bankruptcy Code, a continuing Lien on the DIP Collateral, subject to the terms of the

Intercreditor Agreement.   The Liens authorized hereunder shall be first priority, except as

otherwise provided in this Order, including in respect of the Carve-Out.

15.    The Liens granted hereunder shall not be subordinated to or pari passu with any

other Lien, however arising.  The DIP Lenders shall not be subject to the equitable doctrine of

"marshaling" or any other similar doctrine with respect to any DIP Collateral.

16.    The Liens in favor of the DIP Lenders described herein shall be deemed valid,

binding, enforceable and perfected upon entry of this Order, and shall not be subject to any Lien

which is avoided and preserved for the benefit of the Debtors' estates under section 551 of the

Bankruptcy Code.  Notwithstanding anything to the contrary in this Order or the Prepetition

Loan Documents, the avoidance of a Lien on, or claim with respect to, property of the Debtors

under sections 544, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code shall not diminish or

otherwise affect the validity or priority of the Liens granted with respect to such property to the

DIP Lenders or any superpriority claims granted to the DIP Lenders hereunder.

17.    The DIP Lenders shall not be required to file any financing statements,

mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any

other action in order to validate or perfect the Liens granted by or pursuant to this Order.

18.    Each of the DIP Lenders may, in its sole discretion from time to time, file any

such financing statements, mortgages, notices of lien or similar instruments, or take any other

action to validate or perfect any such security interest, mortgage, or other Lien, as such DIP

Lender shall deem appropriate in accordance with the terms of this Order and all such documents

and instruments shall be deemed to have been filed or recorded at the time and on the date of
entry of this Order. The Debtors and their officers are hereby directed to furnish to each of the
DIP Lenders any information requested by such DIP Lender in connection with any such filings.
The Debtors shall give the DIP Lenders at least 20 days notice prior to filing a motion seeking
dismissal of the Case, and without limiting any other rights or remedies each of the DIP Lenders
may have under this Order or the Prepetition Loan Documents, the Debtors shall promptly
comply with any requests made by such DIP Lender under this paragraph prior to any such
dismissal.

19.    A certified copy of this Order, in the discretion of either DIP Lender, may be filed
with or recorded in filing or recording offices in addition to or in lieu of such financing
statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby
directed to accept such certified copy of this Order for filing and recording.

20.    Pursuant to sections 363 and 364 of the Bankruptcy Code, any provisions in any
of the leases of nonresidential real property under which the Debtors are a lessee (each, a
"Lease" and collectively, the "Leases") and any provisions in any of the license agreements
under which the Debtors are a licensee, that require the consent or approval of one or more of the
Debtors' landlords or licensors or any other person or governmental authority, as the case may
be, in order for the Debtors to pledge or mortgage their interests in such Lease or other
agreement, or that prohibits or conditions the granting of any Liens herein, are and shall be
deemed inconsistent with the provisions of the Bankruptcy Code and are and shall have no force
and effect with respect to the transactions granting the Liens by the Debtors in accordance with
this Order.

21.     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified as to the DIP Lenders to the extent necessary to implement the provisions of this Order and the Prepetition Loan Documents, thereby permitting the DIP Lenders, inter alia, to receive and apply collections of the Collateral, to file any financing statements or other instruments and documents, if any, evidencing its security interests in and liens on the DIP Collateral, to charge any fees and interest to the Postpetition Obligations as provided herein and in the Prepetition Loan Documents.

22.     The rights and obligations of the Debtors and the rights, claims, security interests, liens and priorities of the DIP Lenders arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities granted under the Prepetition Loan Documents or the Intercreditor Agreement.

23.     The administrative priority for the Postpetition Obligations granted hereunder shall be subordinate only to (i) fees payable pursuant to 28 U.S.C. § 1930(a)(6); and (ii) upon the occurrence and during the continuance of an Event of Default (which is not subsequently waived or cured) the payment of accrued and unpaid professional fees and expenses allowed by the Court (whether incurred prior to or subsequent to such Event of Default) of attorneys, accountants, financial advisors or other professionals retained by the Debtors and any Committee appointed in this Case pursuant to section 1103 of the Bankruptcy Code (collectively, "Estate Professionals"), in an aggregate amount not in excess of $150,000 (the "Carve-Out"), provided, that any fees and expenses incurred or accrued (regardless of whether such fees and expenses have actually been paid under sections 330, 331 and 503 of the Bankruptcy Code prior to or following an Event of Default) (i) prior to the occurrence of an Event of Default shall not reduce the Carve-Out, and (ii) from and after the occurrence of an Event of Default shall reduce dollar-

for-dollar the Carve-Out. Fees and expenses of Estate Professionals incurred or accrued prior to an Event of Default shall have the same priority as the Carve-Out up to 120% (not to exceed $120,000) of the aggregate amount of Estate Professional fees and expenses (the "Accrued Fees") included in the most recent Variance Report delivered to and accepted by the DIP Lenders. The Debtors, at their election, may treat incurred or accrued but unpaid Estate Professional fees and expenses as actually paid for purposes of the Budget and Variance Report. Except with respect to the Carve-Out and Accrued Fees, no other claim or expense, having a priority senior to or pari passu with that granted to the DIP Lenders in this Order, shall be granted in this Case, or any superseding chapter 7 cases, while any portion of the Post Petition Obligations or the commitments of the DIP Lenders to make Post Petition Advances remain outstanding. ~~Other than as expressly provided in this Order, no costs or expenses of administration shall be imposed against the DIP Lenders, their claims, or the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.~~

### Adequate Protection of Prepetition Obligations

24.     As adequate protection to each of the DIP Lenders for and to the extent of any diminution in the value of its interests in the Prepetition Collateral resulting from (a) the use, sale, or lease of the Prepetition Collateral pursuant to section 363, and (b) the imposition of the automatic stay pursuant to section 362(a):

a.      Effective upon the date of this Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or otherwise, each of the DIP Lenders is granted valid, perfected, and non-avoidable replacement security interests in and liens upon (the "Replacement Liens") all of the DIP Collateral, in the same priority as existed on the Petition Date, *except for Avoidance Actions,* subject only to (i) the liens and security interests granted pursuant to this Order to secure the Postpetition

Obligations; and (ii) any interests or liens to which the liens securing the Postpetition Obligations are subject to as provided in this Order.

b.    The Prepetition Obligations shall have the status of superpriority administrative expenses, in accordance with section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses, whether heretofore or hereafter incurred, specified in, or ordered by the Court pursuant to any other section of the Bankruptcy Code, including, without limitation, sections 105, 326, 330, 331, 503(a), 503(b), ~~506(c)~~, 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, subject only to (i) the superpriority administrative claims of the Postpetition Obligations granted pursuant to this Order; ~~and~~ (ii) the claims to which the superpriority claims of the Postpetition Obligations are subject to as provided in this Order; *and (iii) any claims under section 506(c)*.

25.    The Debtors are hereby deemed to have waived the right to challenge the validity, enforceability, scope, or perfection of any pre-Petition Date security interest, mortgage, or lien of the DIP Lenders against the Collateral, and the validity and enforceability of the Prepetition Obligations. The Debtors are deemed to have waived the right to assert defenses, offsets, claims or counterclaims of any kind against the DIP Lenders with respect to the Prepetition Loan Documents and Prepetition Obligations, including, but without limitation, all claims for the recovery of property or the avoidance of transfers under sections 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or otherwise. Notwithstanding the foregoing, the Committee or any other party in interest with requisite standing shall be permitted to investigate and seek to disallow the DIP Lenders' claims in respect of the Prepetition Obligations, avoid any security or collateral interest of the Debtors claimed by either of the DIP Lenders in respect of the Prepetition Obligations, or to seek the disgorgement of all or any part of any payment made

by the Debtors to either of the DIP Lenders in respect to the Prepetition Obligations (including,

without limitation, by virtue of such DIP Lender's claim in respect of the Prepetition Obligations

being determined to be unsecured or undersecured or for any other reason) (a "Challenge"). A

*the date 60 days after the formation of the Committee ("the "Challenge*

Challenge must be commenced on or before May 28, 2004. If no Challenge is commenced on or  *Deadline")*

prior to such date, all parties in interest shall be deemed to have waived the right to challenge

and, without any further order, this Order shall be deemed to confirm the validity, enforceability,

perfection and priority of the Prepetition Obligations and the liens, security interests and

mortgages which secured the Prepetition Obligations. Payment of the Prepetition Obligations

shall not in any way affect any right of any Committee or any other party in interest with

*the Challenge Deadline*

requisite standing in the Court to assert a Challenge on or before May 28, 2004; including the

commencement of an avoidance action, and, in the event of a successful Challenge, shall not

affect the right to recover such payment; provided, however, that to the extent it is finally

determined as a result of any such Challenge that as of the Petition Date any portion of any DIP

Lender's claim for payment of the Prepetition Obligations was an unsecured claim under

section 506(a) of the Bankruptcy Code (a "Prepetition Deficiency Claim"), then such DIP Lender

shall be deemed to have returned to the Debtors a portion of the payment made to it hereunder in

an amount equal to such Prepetition Deficiency Claim, and such amount shall be

contemporaneously applied against the such DIP Lender's Postpetition Obligations in like

amount, and the amount so deemed returned to the Debtors shall be an allowed unsecured claim

of such DIP Lender's against the Debtors for all purposes, and provided further, that the right to

such deemed returned payment shall, up to the amount of the Post Petition Obligations, be the

exclusive remedy of the challenging party with respect to any Prepetition Deficiency Claim.

26.    Absent the DIP Lenders' prior written consent, the Collateral, other than Cash Collateral, may be sold, leased or otherwise disposed of, but only in the ordinary course of the Debtors' businesses.

27.    For purposes of this Order, "Cash Collateral" is defined as the cash which constitutes the "cash collateral" of the DIP Lenders under the Prepetition Loan Documents, as that term is defined in Section 363(a) of the Bankruptcy Code, in which the DIP Lenders have an interest under their Prepetition Loan Documents, including all cash arising from the collection or other conversion to cash of the Collateral. The Debtors are authorized and directed to deposit any and all Cash Collateral, including any and all proceeds of the sale, lease, or other disposition of Collateral, including, without limitation, proceeds of any sale of assets pursuant to the Sale and Procedures Motion and the Approval Order or any other sale pursuant to section 363 of the Bankruptcy Code, into that certain account maintained at Bank of America, N.A., identified as deposit account number 3750793693 (the "Cash Collateral Account"), in accordance with the terms and conditions in that certain Three Party Agreement Relating to Lockbox Services, dated as of June 21, 2002, by and among ACG, Transamerica and Bank of America, N.A., as amended. Funds deposited in the Cash Collateral Account shall become the sole and exclusive property of the DIP Lenders and the DIP Lenders may apply such proceeds or Cash Collateral consistent with this Order, the Prepetition Loan Documents and the Intercreditor Agreement.

28.    Notwithstanding section 362 of the Bankruptcy Code, proceeds or payments received by the DIP Lenders through the Cash Collateral Account or otherwise (other than with respect to the Mexican Equipment and the Avoidance Actions) shall be applied first against the Transamerica Prepetition Obligations until the same are paid in full, second against the Transamerica Postpetition Obligations until the same are paid in full, third against the Hilco

Prepetition Obligations until the same are paid in full, and fourth against the Hilco Postpetition Obligations until the same are paid in full, in accordance with the terms of this Order, the Prepetition Loan Documents and the Intercreditor Agreement, except that proceeds or payments received by the DIP Lenders through the Cash Collateral Account or otherwise with respect to the Mexican Equipment and the Avoidance Actions shall be applied first to the payment of accrued interest owing in respect to Hilco Prepetition Obligations, and then to the payment of principal and all other amounts owing in respect to the Hilco Prepetition Obligations. The Debtors hereby irrevocably waive any right to direct the manner of application of any payments to the DIP Lenders or any other receipts by the DIP Lenders of proceeds of the DIP Collateral. Notwithstanding the foregoing provisions of this paragraph, either of the DIP Lenders shall have the exclusive right to reapply any amounts applied in accordance with this Order. Further, notwithstanding the foregoing provisions of this paragraph, in the event that proceeds or payments received by the DIP Lenders, through the Cash Collateral Account or otherwise, are insufficient to repay the Prepetition Obligations and the Postpetition Obligations owed to either Transamerica or Hilco, then such proceeds shall be applied in accordance with section 506 of the Bankruptcy Code.

29.   Subject to paragraph 9 hereof, the Debtors, without further motion to or hearing by the Court, shall reimburse the DIP Lenders promptly for all costs and expenses (including, without limitation, all filing and recording fees, reasonable attorneys' and paralegals' fees and expenses and out-of-pocket audit expenses) incurred by any DIP Lender at any time in connection with or related in any way to the DIP Financing or the Postpetition Obligations, including without limitation costs and expenses in connection with: (i) preparation of the Motion, this Order, the Final Order, and related instruments, documents and agreements; (ii) preservation

and protection of the DIP Lenders' rights hereunder and thereunder; (iii) collection of all loans by the DIP Lenders to the Debtors; (iv) defense of any claim or action asserted or brought against any DIP Lender by any person that arises from or relates to the Prepetition Loan Documents, this Order, the Final Order, any DIP Lender's claims against the Debtors, or any and all matters in connection therewith; (v) commencement or defense of, or intervention in any proceeding in this case; (vi) the filing of any petition, complaint, answer, motion or other pleading, or taking of any other action in or with respect to the DIP Collateral; (vii) the protection, collection, lease, sale, taking possession of, or liquidation of any of the DIP Collateral; (viii) any attempt to enforce any security interest in any of the DIP Collateral; or (ix) the receipt of any professional advice with respect to any of the foregoing. Said costs and expenses shall also constitute Postpetition Obligations.

### Reporting and Access Matters; Sale Process

30.    Upon reasonable advance notice, a representative or representatives of the DIP Lenders, or agent(s) of the DIP Lenders, may enter and remain at the places of business of the Debtors at any time during ordinary business hours and may observe the Debtors' conduct and operations, and review the Debtors' books and records, but shall not in any respect direct or participate in the management of the day-to-day business operations of the Debtors. The Debtors are directed to cooperate fully with any such representative. All direct and indirect expenses incurred by either of the DIP Lenders with respect to such observation and with respect to any analysis or report prepared by the Debtors, either of the DIP Lenders, or their respective agents, in connection therewith, shall accrue and be payable by the Debtors, consistent with the terms of the Prepetition Loan Documents, as Postpetition Obligations.

31.    The Debtors shall provide the DIP Lenders with such information as the DIP Lenders may reasonably request concerning the Debtors' post-petition business operations and

the financial condition of the Debtors, including without limitation, the information and financial statements the Debtors are required to provide to either of the DIP Lenders under the Prepetition Loan Documents. The Debtors also shall allow the DIP Lenders to audit the books and records of the Debtors upon request.

32.    The Debtors are directed and authorized to diligently pursue a sale of substantially all of its assets on terms and conditions acceptable to the DIP Lenders in all respects (the "Sale Process") as will be contemplated by the Sale and Procedures Motion. In connection therewith, the Debtors shall (a) at least once every week furnish to each of the DIP Lenders a report listing the names and addresses of all entities known to the Debtors who, at any time after the Petition Date, either were solicited or who submitted a written inquiry, regarding the possible purchase of any of the assets of the Debtors and describing, to the best of their knowledge, the current status of each such entity's interest in purchasing substantially all of the assets of the Debtors; (b) immediately upon receipt, inform each of the DIP Lenders of all written offers (with copies of such offers to be delivered to the DIP Lenders within two (2) Business Days from receipt) regarding the purchase of the assets of the Debtors and describing any affiliated relationship to the Debtors of the entity or entities making such offer; (c) ensure that any confidentiality agreements executed with any prospective purchasers is acceptable in form and substance to the DIP Lenders and permits the Debtors and their representatives and agents to communicate to each of the DIP Lenders and its representatives the identity of the proposed purchaser(s), all information known to the Debtors about the proposed purchaser(s), all terms of the negotiations and all proposals and drafts thereof; and (d) promptly furnish each of the DIP Lenders and the counsel to the Committee with copies of all marketing materials. The Debtors will use commercially reasonable efforts to obtain a provision in any confidentiality agreements executed

with any prospective purchasers which permits the Debtors and their representatives and agents to communicate to the Committee and its members the identity of the proposed purchaser(s), all information known to the Debtors about the proposed purchaser(s), all terms of the negotiations and all proposals and drafts thereof.

## Events of Default and Termination Date

33.    The occurrence of any one or more of the following events (regardless of the reason therefor) shall, unless expressly waived in writing by the DIP Lenders, constitute an "Event of Default":

(a)    the entry of an order either dismissing the Case or converting the Case to chapter 7 cases;

(b)    the entry of an order appointing a chapter 11 trustee in the Case;

(c)    except as otherwise provided in this Order, the entry of an order granting any other claim superpriority status or any other claim a lien equal or superior to that granted to the DIP Lenders;

(d)    the entry of an order staying, reversing, vacating or otherwise modifying this Order or any material breach of, or amendment, supplement or other modification to, this Order shall occur without the prior written consent of the DIP Lenders;

(e)    the entry of an order in the Case appointing an examiner having enlarged powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code;

(f)    the failure of the Debtors to pay principal, interest, or fees when due in respect of any of the Postpetition Obligations;

(g)    the failure of the Debtors to perform or comply with any other material term or covenant contained herein and such default shall continue unremedied for a period of 10 days after written notice thereof;

(h)    any representation or warranty by the Debtors hereunder shall be incorrect or misleading in any material respect when made;

(i)    there shall be any material adverse change in the financial condition, business, prospects, operations, properties or performance of the Debtors;

(j)    the entry of any order granting any relief from the automatic stay so as to allow a third party (other than a purchase money security interest holder with a lien senior to the DIP Lenders or an equipment lessor) to proceed against any assets of the Debtors having a value in excess of $75,000;

(k)    the entry of the Final Order shall not have occurred within 40 days after the Petition Date;

(l)    ~~the assertion by the Debtors of claims arising under section 506(c) of the Bankruptcy Code against the DIP Lenders or~~ the commencement by any other party in interest of any other actions adverse to the DIP Lenders, including, without limitation, any action challenging the validity, enforceability, or priority of the Postpetition Obligations or Prepetition Obligations that asserts a claim in excess of $300,000 or seeks a legal or equitable remedy that would have the effect of subordinating the claim or Lien of any DIP Lender to a claim in excess of $300,000 and such suit or action shall not have been dismissed or stayed within 30 days after service

CHI:1353011.8

thereof on any DIP Lender, as applicable, or, if stayed, such stay shall have been lifted;

(m)    the failure of the Debtors (i) to file a motion on the Petition Date to retain Tom S. O'Donoghue of Corporate Revitalization Partners LLC ("CRP"), as the Debtors' chief restructuring officer with authority to operate the Debtors' businesses and sell substantially all their assets (subject only to approval by this Court as required by section 363 of the Bankruptcy Code and the terms of this order and the Final Order) or (ii) to obtain entry of an order in form and substance satisfactory to the DIP Lenders in their sole discretion approving such retention within 10 days of the Petition Date;

(n)    the failure of the Debtors to receive on or before May 21, 2004 one or more expressions of interest in acquiring a material portion of the Debtors' assets for a price in excess of the aggregate of the Prepetition Obligations and the Postpetition Obligations outstanding as of such date;

(o)    the failure of the Debtors to file a motion seeking entry of an order in form and substance satisfactory to the DIP Lenders (the "Approval Order") approving the bidding procedures and the sale of substantially all of the Debtors' assets on substantially the same terms and conditions set forth in the Sale and Procedures Motion by May 31, 2004;

(p)    the failure of the Debtors to receive on or before June 11, 2004 one or more letters of intent with respect to acquiring a material portion of the Debtors' assets for a price in excess of the aggregate of the Prepetition Obligations and the Postpetition Obligations outstanding as of such date;

(q)    the failure of the Debtors to obtain entry of the Approval Order by June 14, 2004;

(r)    the failure of the Debtors to obtain on or before July 14, 2004 entry of an order (a "Sale Order") approving a sale of a material portion of the Debtors' assets for a price in excess of the aggregate of the Prepetition Obligations and the Postpetition Obligations outstanding as of such date on terms and conditions satisfactory to the DIP Lenders pursuant to Section 363 of the Bankruptcy Code;

(s)    the failure of a sale pursuant to a Sale Order to close on or before August 10, 2004;

(t)    Tom O'Donoghue ceases to be the Debtors' CRO without the consent of the DIP Lenders;

(u)    except as permitted in this Order or any final order approving the DIP Financing, any Debtor shall, without the consent of the DIP Lenders, make any payments in the aggregate in excess of $15,000 in respect of any prepetition claim other than in respect of accrued payroll and related expenses and employee benefits as of the Petition Date;

(v)    the failure of the Debtors to deliver the Budgets and the Variance Reports by the deadlines set forth in paragraph 10 of this Order; or

(w)    the exceeding of the Total Uses item in the most recent Budget on a cumulative basis from the Petition Date in excess of the maximum permitted Budget variance for the Total Uses item in contravention of paragraph 10 of this Order.

34.    Notwithstanding the provisions of sections 362 and 1121(b) and (c) of the Bankruptcy Code and without order of or application or motion to the Court, upon the occurrence of an Event of Default, and at all times during the continuance thereof, either of the DIP Lenders may (i) cease funding under this Order or establish additional reserves under the Prepetition Loan Documents, with prompt telephonic notice thereof to the Debtors, as well as to the United States trustee and counsel for the Committee; and (ii) on 3 Business Days prior written notice to the Debtors, as well as to the United States trustee and counsel for the Committee, (u) terminate forthwith the DIP Financing and the Commitments under the Prepetition Loan Documents (the "Termination Date"), (v) declare the Prepetition Obligations and the Postpetition Obligations to be immediately due and payable, (w) set off immediately all amounts in the Cash Collateral Account, (x) enforce rights against any Collateral in the possession or control of either of the DIP Lenders; (y) seek to convert this Case to cases under chapter 7 or to have a chapter 11 trustee appointed in the Case and (z) exercise any and all rights and remedies allowed under the Prepetition Loan Documents or this Order; provided, however, that in the case of an Event of Default as specified in subparagraphs (n), (o), (p), (q), (r), and (s) in paragraph 33 above, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby deemed modified as to the DIP Lenders to permit CRP or such other designee acceptable to Transamerica (or, if Transamerica has been paid in full, Hilco) to immediately exercise any and all rights and remedies allowed under the Prepetition Loan Documents with respect to the Collateral, including the liquidation of the Debtors' assets in a manner acceptable to Transamerica (or, if Transamerica has been paid in full, Hilco), upon prompt telephonic notice to the Debtors, the United States trustee and counsel for the Committee.  Either DIP Lender's failure to exercise any of the rights under this paragraph shall not constitute a waiver of any of its

rights.   Nothing in the foregoing paragraph shall be deemed to modify the DIP Lenders' respective rights and obligations under the Intercreditor Agreement, including without limitation Section 4 thereof.

35.    Notwithstanding paragraphs 33 and 34 above, no Event of Default can be declared until entry of the Final Order unless declared by both DIP Lenders, except for any Events of Default specified in subparagraphs (a), (b), (c), (d), (f), (i), (k) and (m) in paragraph 33 above.

36.    If the DIP Lenders cease making Postpetition Advances due to the occurrence of an Event of Default, the obligations and rights of the DIP Lenders with respect to all transactions which have occurred prior to such termination shall remain unimpaired and unaffected by any such termination and shall survive such termination.

## Termination of DIP Financing

37.    All Postpetition Obligations shall be repaid in full and the DIP Lenders' commitment to make Postpetition Advances shall terminate at the earliest to occur of (i) August 20, 2004, (ii) the Termination Date, and (iii) the closing date of a sale of substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code.

38.    In addition to any rights and remedies of the DIP Lenders under the terms of this Order, the interim DIP Financing approved under this Order shall immediately and automatically terminate and the Postpetition Obligations shall be immediately due and payable at 4:00 p.m. (Central time) 40 days after the Petition Date, unless the Final Order approving the DIP Financing on a permanent basis on terms satisfactory to the DIP Lenders has been entered on or prior thereto.

39.     The obligations of the Debtors and the rights, claims, liens, security interests, and priorities of the DIP Lenders shall remain unimpaired and unaffected by the termination of the interim DIP Financing pursuant to the preceding paragraph.

## Miscellaneous Provisions

40.     In reviewing requests for and making decisions regarding Postpetition Advances, administering the Postpetition Advances, or taking any other actions reasonably related to the Motion, this Order, or the Prepetition Loan Documents, neither of the DIP Lenders shall have any liability to any third party (including creditors of the Debtors and any party to any agreement purporting to prohibit, restrict or otherwise limit the Debtors from encumbering any of their assets) and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

41.     Except with the express consent of the DIP Lenders, the liens, security interests, rights and remedies granted to the DIP Lenders pursuant to this Order and the Prepetition Loan Documents (including, without limitation, the DIP Lenders' right to demand payment of all Postpetition Obligations and to enforce its liens and security interests in the DIP Collateral) shall not be modified, altered or impaired in any manner by any plan of reorganization confirmed in this Case or any other order (including, without limitation, any order for financing of or extensions of credit to or incurring of debt by the Debtors pursuant to section 364 of the Bankruptcy Code or otherwise).

42.     The provisions of this Order shall be binding upon and inure to the benefit of the DIP Lenders, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed as a representative of any estate herein or of any estate in any superseding case under the Bankruptcy Code).  The Debtors, on behalf of themselves and their respective

successors and assigns, hereby release and discharge each of the DIP Lenders, its agents, officers, directors and employees, from all claims and causes of action arising out of such DIP Lender's relationship with the Debtors prior to the date of this Order. Nothing in this paragraph shall affect the rights of a party in interest with respect to a Challenge.

43.    Unless the DIP Lenders expressly consents, no plan of reorganization confirmed in this Case shall impair or otherwise modify the rights of the DIP Lenders under this Order or the Prepetition Loan Documents.

44.    Each of the DIP Lenders shall be entitled, pursuant to Section 363(k) of the Bankruptcy Code, to credit bid the full amount of the Prepetition Obligations and the Postpetition Obligations in connection with any sale of Collateral.

45.    If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent Order of this or any other Court, such stay, modification or vacation shall not affect the validity of any debt to the DIP Lenders incurred pursuant to this Order prior to the effective date of such stay, modification or vacation, or the validity and enforceability of any lien or priority authorized hereby with respect to any such debt. Notwithstanding any such stay, modification or vacation, any advances of funds made pursuant to this Order by the DIP Lenders prior to the effective date of such modification, stay or vacation, to or for the benefit of the Debtors, shall be governed in all respects by the original provisions of this Order, and the DIP Lenders shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such advances.

46.    Each of the DIP Lenders will have the same rights of seniority with respect to the Postpetition Advances that it has with respect to the Prepetition Obligations pursuant to the Intercreditor Agreement.

47.    Notwithstanding anything herein to the contrary, including without limitation paragraph 33 hereof, the granting of administrative priority claims or Liens senior to the administrative claims and post petition Liens of the DIP Lenders to holders of valid reclamation claims, up to an aggregate amount of $100,000, shall not constitute an Event of Default or other violation of this Order; provided, that any reclamation claims that would be junior to the Liens and security interests under the Prepetition Loan Documents existing as of the Petition Date shall remain junior to the Liens securing the Prepetition Obligations.

48.    Other than as expressly set forth above, no rights are created hereunder for the benefit of any third party, any creditor (other than the DIP Lenders) or any direct, indirect or incidental beneficiary.

49.    The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the DIP Lenders to take any action authorized or contemplated by this Order and to carry out the terms hereof, subject, however, to the satisfaction of any notice, procedural and other conditions contained in this Order or the Prepetition Loan Documents.

50.    No waiver, modification, or amendment of any of the provisions of this Order shall be effective unless set forth in writing, signed by the parties required under the Prepetition Loan Documents and approved by the Court.

51.    In the event of any irreconcilable inconsistency between this Order and any agreement heretofore or hereafter entered into between the Debtors and the DIP Lenders, the terms of this Order shall govern and control.

**Final Hearing**

52.    The Final Hearing on this Motion, pursuant to Bankruptcy Rule 4001, shall be held on May 3, 2004, *at 10:00am* in the Courtroom of the Honorable *A. Benjamin Goldgar*, United States Bankruptcy Judge, Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois 60604.

53.    Service of this Order and the Motion by first class mail on or before April 15, 2004 upon (i) counsel for the prepetition ad hoc committee of unsecured creditors; (ii) the Office of the United States Trustee; (iii) all parties who have filed requests for notice under Bankruptcy Rule 2002; (iv) Transamerica; (v) Hilco; (vi) the twenty largest unsecured creditors of the Debtors at their last known addresses; (vii) counsel for Transamerica; (viii) counsel for Hilco; (ix) all parties known by the Debtors to have liens on or security interests in the Debtors' assets; (x) the licensors under any license agreements under which the Debtors are a licensee; (xi) each of the landlords under the Leases; and (xii) the Internal Revenue Service, shall constitute good and sufficient notice of the Final Hearing on the Motion.

54.    Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the Clerk of the Bankruptcy Court and personally served upon (a) the attorneys for the Debtors, Robert M. Fishman, Shaw Gussis Fishman Glantz Wolfson & Towbin LLC, 321 N. Clark Street, Suite 800, Chicago, Illinois 60610, fax: (312) 980-3888; (b) the attorneys for Transamerica, Daniel J. McGuire, Winston & Strawn, at 35 W. Wacker Dr., Chicago, Illinois 60601-9703, fax: (312) 558-5700; (c) the attorneys for Hilco, Michael M. Eidelman, Vedder, Price, Kaufman and Kammholz, P.C., 222 North LaSalle Street, Suite 2600, Chicago, Illinois 60601, fax: (312) 609-5005; (d) the Office of the United States Trustee, 227 West Monroe Street, Suite 3350, Chicago, Illinois 60606-5025, fax: (312) 886-5794; and (e) counsel to the ad-hoc committee of unsecured creditors, Faye B. Feinstein, Quarles & Brady LLP, 500 West Madison,

Suite 3700, Chicago Illinois 60661, fax: (312) 715-5155 and must be filed with the Court and received by said parties on or before 5:00 p.m. (Chicago time) on April 28, 2004.

     55.    The provisions of this Order shall be effective upon entry of this Order, and the Clerk of the Court is hereby directed to forthwith enter this Order on the docket of this Court maintained in regard to this Case.

Dated: April __, 2004

                                         United States Bankruptcy Judge

                                     **APR 1 3 2004**